IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **VEERIYA NATARAJAN** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 16-1196** |
| | * | |
| **SARAVANAN BABU RAJU,** *et al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

**MEMORANDUM OPINION**

Veeriya Natarajan ("Natarajan") has sued Saravanan Babu Raju ("Babu"), his wife Umarani Natesan ("Natesan"), and a company with which they are affiliated – Washington University of Technology, Inc. ("WUT") – for Fraud in the Inducement, Breach of Contract, Unjust Enrichment and Attorney's Fees. He has sued Babu separately for Breach of Oral Contract; and has sued together Babu and AIMU-CUC Center for Medical Science, LLC ("AIMU"), an entity affiliated with Natesan, for Unjust Enrichment. He has also sued together Rajesh Bhandari and Sakson Enterprises, Inc., d/b/a Sakson Settlements ("Sakson") for Aiding and Abetting (Count IV).

Bhandari and Sakson have filed a Motion to Dismiss Count IV for Failure to State a Claim Upon Which Relief Can Be Granted ("Motion to Dismiss").[1] ECF No. 5. For the reasons that follow, the Motion to Dismiss will be **DENIED.**

---

[1] In the body of the Motion, Bhandari and Sakson write "in the alternative, the Court, through its discretion can treat this Motion to Dismiss as a Motion for Summary Judgment." ECF No. 5 at 1. The Court construes this request as a Motion for Summary Judgment in the Alternative, which is also **DENIED**.

-1-

**I.**

This dispute centers on a series of three loans that Natarajan allegedly made to Babu, Natesan, and WUT or AIMU ("Defendants") in March and April 2014.[2] These are the pertinent details:

On March 19, 2014, Natarajan entered into a written agreement with Babu, Natesan, and WUT to lend them $3,000,000 to complete the purchase of real property in Lanham, Maryland, from Washington Bible College ("WBC"). ECF No. 1 ¶ 12; ECF No. 5-1 at 2. Babu allegedly represented to Natarajan that WUT already "owned" the property. ECF No. 1 ¶ 10. Title to the property was said to be in escrow, the suggestion being that perhaps WUT held an equitable interest in the property. Pursuant to the agreement, Babu and Natesan were to be guarantors of the loan and Natarajan was to be a secondary lienholder on the property. ECF No. 1 ¶¶ 13, 17, 18.

According to Natarajan, on or about March 25, 2014, Babu and Bhandari, who was the sole officer of Sakson, phoned him and represented that Sakson was the settlement company that would handle the closure of the sale of the property from WBC to WUT. *Id.* ¶ 22. In response to a question put by Natarajan, Bhandari allegedly advised him that his interest in the property did not need to be recorded in order to be preserved and that WUT intended to pay cash for the property. ECF No. 1 ¶¶ 24—26.

On May 21, 2014, Natarajan wired $1,000,000 to WUT pursuant to the loan agreement. *Id*. at 1¶ 35. By the terms of the agreement, the loan was to be repaid by June 30, 2014 at an interest rate of 7.5 percent per annum through June 30, 2014 and at an interest rate of 12 percent per annum after June 30, 2014. *Id.* ¶ 36.

---

[2] The April loans are not the subject of the Motion to Dismiss.

As it turned out, WUT did not own WBC and the WBC property was eventually sold to a buyer other than WUT. As it also turned out, WUT apparently never held any equitable or legal interest in to the property. *Id.* at 39.

In a separate transaction, Natarajan made two additional loans to AIMU,[3] one on April 16, 2014 ($150,000) and the other on April 18, 2014 ($100,000)("April loans"). ECF No.1 ¶¶ 29-34. Both of these loans were to be repaid by June 30, 2014 at an interest rate of 7.5% per annum. *Id.* at ¶¶ 30, 33. Babu, Natesan, WUT and AIMU allegedly never repaid these loans. *Id.* ¶ 38.

As a result, Natarajan filed the present suit alleging seven causes of action, as previously indicated. Except for Bhandari and Sakson, all other Defendants have answered the Complaint. ECF No. 6. For present purposes, the Court considers only the cause of action against Bhandari and Sakson for Aiding and Abetting, and whether it is subject to dismissal or summary judgment ECF No. 1 ¶¶ 61—65.

## II.

A party may move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), where a complaint fails to state facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). With few exceptions, the court limits itself to the pleadings when considering such a motion. "A court reviewing a motion to dismiss pursuant to Rule 12(b)(6) generally may not consider extrinsic evidence." *Lupo v. JPMorgan Chase Bank, N.A.*, Civil Action No. DKC 14-0475, 2015 U.S. Dist. LEXIS 130869, at *47 (D. Md. Sep. 28, 2015).

---

[3] Natesan was the registered agent of AIMU. ECF No. 8.

In support of their Motion to Dismiss, Bhandari and Sakson argue (1) that Bhandari never called Natarajan on March 25, 2014, ECF No. 5-1 at 3, (2) that, even if he did call on that date, he would not have discussed the loan agreement with respect to the proposed purchase of WBC because the agreement had already been signed on March 19, 2014, which was before the alleged phone call, *Id.* at 4, and (3) that Bhandari and Sakson had no incentive to make the alleged admissions/omissions, *Id.* at 4—5.

Deciding whether Natarajan and Bhandari in fact spoke on the phone on March 25, 2014, and what they discussed if they did, is clearly inappropriate in connection with a motion to dismiss. At this stage, the Court credits all facts in the Complaint and draws all inferences in favor of the non-moving party. *Bochenski v. M&T Bank*, No. ELH-14-1031, 2015 U.S. Dist. LEXIS 28976, at *36 (D. Md. Mar. 10, 2015). All the Court needs to consider is whether, assuming Bhandari did speak to Natarajan and advise him that he did not need to record his interest in the property and further that WUT would pay cash – i.e., the facts pled by Natarajan – Bhandari and Sakson could plausibly be held liable for aiding and abetting the Defendants to whom Natarajan in fact made the loan.

Maryland recognizes the tort of Aiding and Abetting. *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 200, 665 A.2d 1038, 1050 (1995). According to the Maryland Court of Special Appeals, the tort has three elements: (1) independent tortious conduct by the principal of the tort; (2) assistance, aid or encouragement to the principal of the tort; and

(3) knowledge that the tortious act would be the natural consequence of their conduct.[4] *Id. See also Saadeh v. Saadeh, Inc.,* 150 Md. App. 305, 328, 819 A.2d 1158, 1171 (2003).

Crediting Natarajan's facts, as the Court is obligated to do at this stage, Natarajan has unquestionably pled a "plausible" case of "tortious conduct by the principal of the tort" – *i.e.*, that Babu, Natesan, and WMU fraudulently induced him to lend money by representing that his loan would be secured by an interest in property to which Defendants never held equitable (or legal) title. *See* ECF No. 6. Natarajan has also alleged that Bhandari assisted the principal tortfeasers, i.e. Babu *et al.,* by counseling Natarajan that he did not need to record his security interest and that WUT was paying cash for the property. See ECF No. 1 ¶ 22. Finally, Natarajan has alleged that, as the settlement agent for the transaction between WBC and WUT, Bhandari had knowledge that the Babu, Natesan, and WUT "did not have [an] interest in the [p]roperty that they could convey to Plaintiff," and "provided substantial assistance . . . to Babu when they misrepresented that Plaintiff did not need to record his interest in the property." ECF No. 1 ¶¶ 63—64.

Since Natarajan has plausibly pled each element of the tort of aiding and abetting, there is no basis on which to dismiss the Complaint. The Motion to Dismiss with therefore be **DENIED.**

### III.

Summary judgment will be granted where "there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party." *Willingham v. Crooke*, 40 F. App'x 850, 851 (4th Cir. 2002). The party opposing the motion is entitled "to have the credibility of his

---

[4] Based on these elements, it is clear that Defendants' third argument – that Bhandari had no incentive to act as Natarajan alleges – is altogether irrelevant.

evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts resolved favorably to him." *Id.* (*quoting Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

In support of their casual request for summary judgment,[5] Bhandari and Sakson have submitted two affidavits in support of their assertion that Natarajan never spoke to Bhandari. In the first, Babu swears that "[a]t no time were there any conference calls between Bhandari, Natarian [sic] and myself, and any allegations made by Natarian [sic] to the contrary are false and fictitious." ECF No. 5-2 ¶ 9. Bhandari likewise attests that "[t]hroughout the preparation for the proposed purchase by Sakson Settlements at no time did I or any agent of Sakson Settlements have any conversations, meetings, or correspondence with the Plaintiff, Veeriya Natarian [sic] (hereinafter 'Natarian') concerning the said Proposed Purchase." ECF No. 5-3 ¶ 6.

In response, Natarajan attaches an affidavit swearing that "[o]n or about March 25, 2014, I was on a telephone conference regarding the sale of real property . . . with Babu, Rajesh Bhandari ('Bhandari'), individually and as a representative of Sakson Enterprises, Inc. d/b/a Sakson Settlements . . ." ECF No. 10-1 at 12. He also appends an email he purportedly received from Babu forwarding Bhandari's contact information and writing "[t]he attorney [sic] name is *Mr.Raja bhandari [sic] with whom you have spoken today . . .*" *Id.* at 14 (*emphasis added*).

Natarajan has without a doubt created a genuine issue of material fact. *See e.g. Creager* 2016 U.S. Dist. LEXIS 35202, at *28 ("in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate"). His sworn statement that he spoke on the phone with Babu and Bhandari directly contradicts their sworn statements that there was

---

[5] It is hardly consistent with good pleading to insert a request for summary judgment in the middle of a Motion to Dismiss without having titled the motion "Motion to Dismiss, or, in the Alternative, for Summary Judgment."

no such conversation. Similarly, the email he has appended to his affidavit, purportedly sent by Babu, clearly suggests that Natarajan spoke to Bhandari, contradicting the affidavit submitted by Bhandari.

Since a reasonable trier of fact could well credit Natarajan's testimony over Bhandari's and Sakson's, their Motion for Summary Judgment will be **DENIED.**

A separate Order will **ISSUE.**

                                                              /s/
                                        **PETER J. MESSITTE**
                                  **UNITED STATES DISTRICT JUDGE**

**January 27, 2017**